## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Rachel S. Corn, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being duly sworn, depose and state as follows:

1.      I have been a SA with the FBI since May 2006.  Since September 2006, I have primarily investigated federal violations concerning child pornography and the sexual exploitation of children.  I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations.  Specifically, I have received FBI Crimes Against Children training, FBI Innocent Images Online Undercover training, and FBI Peer-to-Peer Network Online Investigation training.  I have participated in the execution of numerous search warrants, of which the majority have involved child exploitation and/or child pornography offenses.  Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252A involving child exploitation offenses.  I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography.  In the course of my employment with the FBI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2.      As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.      This affidavit is made in support of applications for warrants to search the following (hereinafter referred to as the "TARGET LOCATIONS"):

  a.      A Samsung cell phone, SM-A115A, S/N: R95R100YY6T;

  b.      A silver USB-A and USB-C combination flash drive;

  c.      A silver SanDisk 128GB USB-C flash drive, #BP211258016Z, SDDDC4;

  d.      The Keepsafe account associated with the following:

    1.      odiethebassplayer@gmail.com;

    2.      odiejr54@gmail.com;

  e.      The Google accounts associated with the following:

    1.      odiethebassplayer@gmail.com;

    2.      odiejr54@gmail.com;

4.      The TARGET LOCATIONS are to be searched for evidence of violations of Title 18, United States Code, Section 2252A(a)(2) (receipt of child pornography), and Title 18, United States Code, Section 2252A(a)(5)(B) (possession of child pornography) (the "TARGET OFFENSES").  The Court has jurisdiction to issue the warrants for searches of the electronic devices pursuant to Federal Rule of Criminal Procedure 41.  The Court has jurisdiction to issue the warrants for the accounts under 18 U.S.C. § 2703(c)(1)(A) because it is a court "with jurisdiction over the offense under investigation." 18 U.S.C. § 2711(3)(A)(i).

5.      The statements in this affidavit are based in part on information and reports provided by U.S. Probation and other law enforcement sources and on my experience and background as a Special Agent of the FBI.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish

probable cause to believe that evidence, fruits, and instrumentalities of the violations of the TARGET OFFENSES are located in the TARGET LOCATIONS.

### SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT AND DISTRIBUTION OF CHILD PORNOGRAPHY

6.      Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the internet to view and receive images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals, including the following:

a.      Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.      Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.      Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure

and private environment, such as a computer or cellphone, and surrounding area.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

      e.     Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.  This data is typically in digital format, and often maintained on computers, cell phones and in online storage, email accounts or other online communication accounts.

      f.     Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of Peer to Peer networks and other online methods would have gained knowledge of its location through online communication with others of similar interest.  Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images.  Individuals who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

      g.     Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.  This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.  Consequently, individuals who have a sexual interest in children store their child pornography images in a variety of portable media and frequently maintain multiple computers, cellular phones, and portable digital storage devices such as "thumb" or "flash" drives to store their collections.  Some portable media devices—particularly "thumb" or "flash" drives—are quite small, allowing them to be easily concealed.

      h.     Moreover, in light of this desire not to be without their child pornography for any prolonged time period, individuals with a sexual interest in children sometimes store their collections or part of their collections on a cellular phone or cellular phones which they tend to carry with them on their person at their home and, when outside the home, virtually everywhere they go.

      7.     Based on my investigative experience related to computer and internet related

child pornography investigations, and the training and experience of other law enforcement

officers with whom I have had discussions, I have learned the following:

      a.     Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized.  It has also revolutionized the way in which child pornography collectors interact with each other.  Child pornography formerly was produced using cameras and film (either still photography or movies).  The photographs required

darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

b.   The development of computers, smartphones and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers, smartphones and the internet serve four functions in connection with child pornography. These are production, communication, distribution, and storage.

c.   Mobile devices such as laptop computers, smartphones, iPods, iPads and digital media storage devices are known to be used and stored in vehicles, on persons or other areas outside of the residence.

d.   Smartphones have the capability to access the Internet and store information, such as videos and images. As a result, an individual using a smartphone can send, receive, and store files, including child pornography, without accessing a personal computer or laptop. An individual using a smartphone can also easily plug the device into a computer, via a USB cable, and transfer data files from one digital device to another. Many people generally carry their smartphone on their person.

e.   Child pornographers can now transfer photographs from a camera onto a computer-readable format. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

f.   Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

g.   The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo, and Google, Inc., Facebook, Dropbox, Instagram, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer

with access to the Internet.  Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data, including email, images, videos, and other files.  The data is maintained on the servers of the providers, and is occasionally retained by the providers after the user deletes the data from their account.

h.       In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

i.       Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the distribution, receipt and possession of child pornography will be found in the TARGET LOCATIONS notwithstanding the passage of time.

j.       In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

k.       When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

l.       In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

m.       The storage capacity of personal computers has increased dramatically over the last few years.  Common and commercially available hard drives are now capable of storing over 500 GB of data.  With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

n.       Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.  Since the storage capacity of hard drives has increased dramatically over the last several years, it is more likely that the above-described information will be recovered during forensic analysis.

**KEEPSAFE**

8.      Keepsafe is photo vault application used to protect photos, videos and documents on mobile devices and tablets.  Users set up a Keepsafe account by providing their name and email address and users must verify their email address before an account is created.  Users can import private pictures to an encrypted, password-protected locker for safe keeping.  Users can lock individual albums for another layer of safety.  Keepsafe's Private Photo Vault also allows users to backup photos to private cloud storage to free up phone storage space.  Keepsafe Photo Vault application includes Military-grade encryption, pin code, fingerprint or touch ID password protection, photo storage for up to 200 pictures and videos for free accounts, and up to 10,000 files with Keepsafe Premium paid accounts, break-in alerts for premium account and decoy vault with separate pin code for premium accounts.

**GOOGLE**

9.      Google provides numerous free services to the users with a Google profile. Some of services include Gmail, Google Hangouts, Google Wallet, Google+, Google Drive, Google Photos and Albums, and YouTube.  Gmail is a web-based email service that can also be accessed via mobile apps.  Gmail comes with 15GB of free storage and users can receive emails up to 50 megabytes in size, including attachments, while they can send emails up to 25 megabytes.  In order to send larger files, users can insert files from Google Drive into the message.  Emails remain in an active Gmail account until deleted by the user.  Google Hangouts is a communication platform which includes instant messaging, video chat, and SMS and Voice Over IP (VOIP) features service that provides both text and voice communication.  Google Hangouts allows conversations between

two or more users.  Chat histories are saved online, allowing them to be synced between devices.

Google Wallet is a mobile payment system that allows its users to store debit cards, credit cards, loyalty cards and gift cards, among other things, on their mobile phones. Google+ is a social networking service.  Google Drive is a file storage and synchronization service, which provides users with cloud storage, file sharing, and collaborative editing.  Google Photos is an image hosting and sharing web service that allows users with a Google account to store and share images for free.

YouTube is a free video sharing website that allows users upload, view and share videos.

**PROBABLE CAUSE**

10.     According to the Maryland Sex Offender Registry website, Otha Royal Palmer ("Palmer"), born in 1954, is currently a registered sex offender.  Palmer was convicted of "Child Porn:Solic Under-Age Sub" in approximately 1993 in the Maryland Circuit Court for Washington County.  Palmer was also convicted of Interstate Transportation of Child Pornography in the U.S. District Court for the Middle District of Pennsylvania in approximately 2001 and of Possession of Child Pornography in the U.S. District Court for the District of Maryland in approximately 2013 (the Maryland federal criminal case number for the 2013 conviction is 12-124).  Palmer was placed on federal supervised release for the Maryland federal conviction in approximately January 2021, and remains on supervised release as of this writing.

11.     In February 2021, Palmer advised his U.S. Probation Agent that his email address was **odiejr54@gmail.com**.  Later that same month, Palmer advised his new email address was **odiethebassplayer@gmail.com**.

12.     As part of his conditions of release, Palmer's electronic devices must be approved and monitored by his U.S. Probation Agent.  On April 30, 2022, during a routine review of the monitored internet data on Palmer's approved cell phone (a Samsung cell phone, SM-A115A, S/N:

R95R100YY6T), it was revealed that Palmer may be in possession of an unauthorized electronic device, specifically a SanDisk 128GB Ultra Dual Drive, which he may have received on April 3, 2022.  Specifically, U.S. Probation observed a screenshot, which was created by the monitoring software, of an Amazon purchase of the SanDisk 128GB Ultra Dual Drive, that was scheduled to be delivered on April 3, 2022.  In addition, the review of the monitored internet data revealed images of nude minors.

13.     On May 11, 2022, U.S. Probation conducted an unannounced home visit at Palmer's residence, located at 429 Guilford Avenue, Hagerstown, Maryland 21740, and Palmer was interviewed.  Palmer admitted to viewing nude and clothed images of minors on his cell phone. After being asked, Palmer admitted to having a **Keepsafe** application that was password protected on this cell phone.   During the home visit, Palmer was found to be in possession of two unauthorized USB devices.  The cell phone and two unauthorized USB devices, which are subjects of this affidavit and application for a search warrant, were seized and can be further described as:

- *A Samsung cell phone, SM-A115A, S/N: R95R100YY6T*.   (This is the aforementioned cellular phone that was disclosed and approved by the U.S. Probation officer.

- *A silver USB-A and USB-C combination flash drive.*  (This was the first device that Palmer provided to the U.S. Probation Officer during the aforementioned home visit.)

- *A silver SanDisk 128GB USB-C flash drive, #BP211258016Z, SDDDC4*. (This device was the device reflected by the monitoring of Palmer's cellular phone.  This device was not approved by or disclosed by Palmer to his U.S. Probation officer until the U.S. Probation Officer specifically asked about it

during the aforementioned home visit.)

14.     The three devices were transported to the United States Probation Office, located at 250 West Pratt Street, Suite 400, Baltimore, Maryland 21201.   On May 18, 2022, a U.S. Probation Agent manually inspected the cell phone and viewed the content of the two USB devices. On the silver SanDisk 128GB flash drive, the Probation Officer observed hundreds of images and videos that contained minors, some in clothing and some nude.

15.     On June 1, 2022, Palmer was arrested for violations of his supervised release.

16.     On June 1, 2022, U.S. Probation provided Palmer's three devices to the FBI.

17.     On June 2, 2022, in response to administrative subpoena, **Keepsafe** confirmed the existence of an account associated with the email addresses **odiethebassplayer@gmail.com** and **odiejr54@gmail.com**.   The account was created on May 7, 2022.

18.     I have not yet viewed any of the images and videos identified so far on the three electronic devices to determine whether they constitute child pornography as defined in 18 U.S.C. Section 2256.   The description contained in this affidavit are based on information provided by the Probation Officer.   However, several reasons cause me to believe that there is probable cause to believe that child pornography or evidence communications pertaining to the receipt or attempted receipt of child pornography, will be found in the TARGET LOCATIONS:

- The Probation Officer's description, although preliminary, is at least potentially consistent with images and videos of child pornography.

- Palmer's failure to disclose the USB-A and USB-C combination flash drive and the SanDisk 128GB USB-C flash drive is consistent with a desire to avoid monitoring of those devices or the activity on the Keepsafe account.

- The images and activity seen thus far on Palmer's devices indicate that he is

continuing to indulge a desire to see prurient images of children. It is therefore reasonable to believe that Palmer is engaged in other efforts to view child pornography, and that his efforts to do so may be more substantial than has been seen so far on his known, approved electronic devices.

- Examination of the approved electronic devices may lead to the discovery of other unapproved electronic devices or internet accounts associated with Palmer.

## SUMMARY

19.     Based on my training and experience, as well as the activity detailed above, I believe that the user of the TARGET LOCATIONS are owned, possessed, and controlled by Palmer, and I respectfully submit there is probable cause that the TARGET LOCATIONS (1) contain evidence of receipt and/or possession of child pornography, and (2) are relevant to determine the ownership and control of the TARGET LOCATIONS.  Based on my training and experience, such information may constitute evidence of the TARGET OFFENSES because the information can be used to identify the account's user or users.

## REQUEST FOR NIGHT-TIME EXECUTION AUTHORIZATION

20.     Because the requested search warrants pertain to electronic devices already in government custody and to third party electronic accounts, for purposes of convenience and efficiency, your affiant requests permission to execute the requested warrants at anytime of the day or night.

## CONCLUSION

21.     Based on the foregoing information, I have probable cause to believe that contraband, and evidence, fruits, and instrumentalities of violations of the TARGET OFFENSES as set forth herein and in Attachments B1, B2, and B3 are currently contained in the TARGET

LOCATIONS more fully described in Attachments A1, A2, and A3.  I therefore respectfully request that search warrants be issued authorizing searches of the TARGET LOCATIONS for the items described above and in Attachments B1, B2, and B3 and authorizing the seizure and examination of any such items found therein.

*Rachel S Corn*
_____
Special Agent Rachel S. Corn
Federal Bureau of Investigation


Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this  9th_____ of June 2022.


*A. David Copperthite*
_____
THE HONORABLE A. DAVID COPPERTHITE
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A1**

**DESCRIPTION OF DEVICES TO BE SEARCHED**

The following items were seized from Otha Royal Palmer by U.S. Probation on May 11, 2022, and are currently being held at the FBI Office located at 801 International Drive, Linthicum, Maryland:

- *A Samsung cell phone, SM-A115A, S/N: R95R100YY6T;*

- *A silver USB-A and USB-C combination flash drive; and*

- *A silver SanDisk 128GB USB-C flash drive, #BP211258016Z, SDDDC4*

## ATTACHMENT A2 – Keepsafe, Inc.

This warrant applies to the following Keepsafe account associated with the following:

- odiethebassplayer@gmail.com; and

- odiejr54@gmail.com,

that is stored at premises owned, maintained, controlled, or operated by Keepsafe, Inc., a business with offices located at 427 Bryant Street, San Francisco, California 94107.

**<u>ATTACHMENT A3 - Google LLC</u>**

This warrant applies to information associated with the following Google accounts:

- odiethebassplayer@gmail.com; and

- odiejr54@gmail.com,

that are stored at premises owned, maintained, controlled, or operated by Google LLC, a business with offices located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## ATTACHMENT B1

The items described in Attachment A1 (the "Devices") may be searched for the following items, which may be seized:

All records, documents, items, data and other information that may constitute fruits or instrumentalities of, or contain evidence related to Title 18 U.S.C. §§ 2252A(a)(2), and 2252A(a)(5)(B), specifically that relate to the following:

1.      All records pertaining to child pornography as defined under Title 18, U.S.C. § 2256(8).

2.      All records concerning correspondence identifying persons transmitting, receiving or possessing, through interstate commerce including by U.S. Mails or by computer, any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, U.S.C. § 2256(2).

3.      All records, documents, invoices and materials that concern any accounts, screen names, social networking sites, online accounts, or email accounts, including Internet Service Providers.

4.      Any and all visual depictions of minors, to include depictions of minors engaged in sexually explicit conduct, nude pictures, and modeling.

5.      Any and all documents, records, or correspondence pertaining to occupancy or other connection to 429 Guilford Avenue, Hagerstown, Maryland 21740.

6.      Any and all records, diaries, notebooks, notes, address books, pictures, emails, chats, directions, maps, banking, travel, documents, and any other records reflecting personal contact and any other activities with minors.

7.      Any and all notes, documents, records, photos, correspondences that relate to travel.

8.      Any and all notes, documents, records, photos or correspondence that indicate a sexual interest in children, including, but not limited to:

      a.      Correspondence with children;
      b.      Any and all visual depictions of minors;
      c.      Internet browsing history;
      d.      Books, logs, emails, chats, diaries and other documents.

9.      All records concerning evidence of who used, owned, or controlled the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

10.     evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence

or absence of security software designed to detect malicious software;

11.    evidence of the lack of such malicious software;

12.    evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence;

13.    evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Devices;

14.    evidence of the times the Devices was used;

15.    passwords, encryption keys, and other access devices that may be necessary to access the Devices;

16.    documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the Devices;

17.    contextual information necessary to understand the evidence described in this attachment; and

18.    image and video files that depict children engaged in sexually explicit conduct pursuant to Title 18 U.S.C. § 2256.

With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

a.    surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

b.     "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

c.    "scanning" storage areas to discover and possible recover recently deleted files;

d.    "scanning" storage areas for deliberately hidden files; or

e.    performing key word or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files or storage areas do not reveal evidence of child pornography, or other criminal activity, the further search of that particular directory, file or storage area, shall cease.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court.   The investigative team may continue to review any information not segregated as potentially privileged.

<u>**ATTACHMENT B2 – Keepsafe**</u>

**I.      Files and Accounts to be produced by Keepsafe between May 7, 2022, to the present.**

To the extent that the information described in Attachment A2 is within the possession, custody, or control of Keepsafe, including any messages, records, files, logs, images, videos, or information that have been deleted but are still available to Keepsafe, Keepsafe is required to disclose the following information to the government for each account or identifier listed in Attachment A2:

a.      All files, records, or other information stored by an individual using the account, including address books, contact and friend lists, calendar data, pictures, videos, texts, passwords, documents, writings and files associated uploaded and deleted date and timestamp, including all available metadata concerning these files;

b.      All records or other information regarding the identification of the accounts described in A2, to include full name, date of birth, gender, user name, vanity name, physical address, telephone numbers, email addresses and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, all screen names associated with subscribers and/or accounts, all account names associated with the subscriber, methods of connecting, log files, means and source of payment (including any credit or bank account number), and detailed billing records;

c.      All passwords and pins created and saved for each account or identifier listed in Attachment A2;

d.      All content to include all images, videos, documents, and other files, and associated uploaded and deleted date and timestamp, including all available metadata concerning these files;

e.      Information regarding the digital devices the Keepsafe application is downloaded and used on;

f.      Payment information, including billing address, shipping address, and payment instruments, associated with any Keepsafe services used by the accounts listed in Attachment A2;

g.      All location history with associated timestamps;

h.      All search history with associated timestamps;

i.      All records pertaining to communications between Keepsafe and any person regarding the account, including contacts with support services and records of actions taken.

j.      All accounts linked to the accounts in Attachment A2, including accounts linked by Keepsafe or third-party cookies, SMS number, Internet Protocol Address, secondary or recovery emails, or other account-linking methods available to Keepsafe, and to any accounts for which the accounts in Attachment A2 are the secondary or recovery email address.

## II.      Information to be Seized by Law Enforcement Personnel

a.      Any and all records that relate in any way to the Keepsafe accounts described in Attachment A2 which are evidence, fruits, and instrumentalities of violations of Title 18 U.S.C. § § 2252A(a)(2) and 2252A(a)(5)(B), specifically that constitute or relate to the following:

1.      Images, videos and other files depicting the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

2.      Communications or documentations regarding the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

3.      Communication or documentation regarding access to and/or interaction with minors, to include the enticement of a minor;

4.      Images depicting the interior or exterior of residences, public establishments, and vehicles;

5.      All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

6.      Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

7.      Evidence of the times the account or identifier listed on Attachment A2 was used;

8.      All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

9.      Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A2 and other associated accounts;

10.      Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

b.      All existing printouts from original storage which concern the categories identified in subsection II.a; and

      c.      All "address books" or other lists of contacts.

      With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

      If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court.   The investigative team may continue to review any information not segregated as potentially privileged.

## <u>ATTACHMENT B3 - Google LLC</u>

**I.      Files and Accounts to be produced by Google LLC between January 1, 2021, to the present.**

Google shall disclose responsive data, if any, by sending to the Federal Bureau of Investigation, 801 International Drive, 4th Floor, Linthicum, Maryland 21090, ATTN: Special Agent Rachel Corn, or rscorn@fbi.gov, using UPS or another courier service, notwithstanding 18 U.S.C. 2252A or similar statute or code.

To the extent that the information described in Attachment A3 is within the possession, custody, or control of Google LLC including any messages, records, files, logs, images, videos, or information that have been deleted but are still available to Google, Google is required to disclose the following information to the government for each account or identifier listed in Attachment A3:

### A.   <u>Google Account Information</u>

1.      Google account registration information, including name, user-specified contact information, recovery email address, recovery SMS number, account creation timestamp and IP address, and a list of Google services the account holder has enabled or accessed;

2.      Account change history IP addresses and associated timestamps;

3.      Google account login and logout IP addresses and associated timestamps;

4.      All means and sources of payment for all Google products and services (including complete credit or bank account numbers), and detailed billing records;

5.      All cookie and user-specific advertising data, including third-party cookies;

6.      All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken;

### B.   <u>Gmail Account Information</u>

7.      Gmail specific subscriber information, login and logout IP addresses and associated timestamps;

8.      Gmail specific non-content email header information, originating message IP addresses, and account settings;

9.      The contents of all e-mails, attachments and chat messages stored in the account, including copies of e-mails sent to and from the account, draft e-mails, the source and destination e-mails sent addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

10.     Contents of all available deleted emails;

**C.  YouTube Account Information**

11.     YouTube specific subscriber information, including date of birth and country;

12.     YouTube specific login and logout IP addresses and associated timestamps;

13.     YouTube video upload IP addresses and associated timestamps;

14.     Copies of all publicly available videos;

15.     Copies of all private videos and associated video information;

16.     Copies of all private messages;

17.     All Channel or Video comments;

18.     All contacts;

**D.  Google Voice Account Information**

19.     Voice specific subscriber information, including signup IP and associated timestamp and user-provided name;

20.     Most recent 28 days of call and text logs;

21.     All account settings and account change history;

22.     Contents of all voicemail messages and text messages;

**E.  Blogger Account Information**

23.     Blogger specific subscriber information, including Blog registration information, Blog creation IP and timestamp, Blog owner/admin subscriber information, and post or comment owner information;

24.     All contents of private blog posts and comments;

**F.  Google+ Account Information**

25.     Google+ specific subscriber and IP address information, including associated timestamps;

26.     All IP addresses and timestamps associated with Posts, Comments, or Photos;

27.     All Content/Activity Stream, including posts, comments, and photos;

28.     All contacts/Circles;

29.     Google+ Profiles;

**G.** **Android Account Information**

30.    Android specific subscriber and IP address information, including associated timestamps;

31.    All device IDs, IMEIs, and MEIDs associated with the target account(s);

32.    Timestamps, including device registration, first check-in, and last check-in;

33.    All Google accounts tied to the Android device(s) if any;

34.    Android hardware information;

35.    Cell carrier/service provider;

36.    All apps downloaded to the device;

**H.** **Photos Account Information**

37.    Photos specific subscriber and IP address information, including associated timestamps;

38.    All upload IP addresses and associated timestamps;

39.    Contents of all Photos and Albums, including all exif data included by the user as part of the upload;

**I.** **Drive Account Information**

40.    Drive specific subscriber and IP address information, including associated timestamps;

41.    All upload IP addresses and associated timestamps;

42.    All Drive content, including Docs, Sheets and Slides;

**J.** **Google Accounts Linked by Cookies**

43.    All accounts linked to the accounts in Attachment A3, including accounts linked by Google or third-party cookies, SMS number, Internet Protocol Address, secondary or recovery emails, or other account-linking methods available to Google, and to any accounts for which the accounts in Attachment A3 are the secondary or recovery email address;

**K.** **Google Location and Search History Information**

44.    All location history with associated timestamps.

45.    All search history and associated timestamps, including all "clicks" and "queries;"

11

**K. Google Hangouts Account Information**

46. Hangouts specific subscriber and IP address information, including associated timestamps;

47. Hangouts specific non-content transactional information for all text, audio, and video communications, including originating message IP addresses, and account settings;

48. The contents of all Hangouts messages and attachments including images, videos and related timestamps and IP address logs;

**II. Information to be Seized by Law Enforcement Personnel**

a. Any and all records that relate in any way to the Google accounts described in Attachment A3 which is evidence, fruits, and instrumentalities of violations of Title 18 U.S.C. § § 2252A(a)(2) and 2252A(a)(5)(B), specifically that relate to the following:

1. Images, videos and other files depicting the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

2. Communications or documentations regarding the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

3. Communication or documentation regarding access to and/or interaction with minors, to include the enticement of a minor;

4. Images depicting the interior or exterior of residences, public establishments, and vehicles;

5. All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

6. Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

7. Evidence of the times the account or identifier listed on Attachment A3 was used;

8. All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

9. Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A3 and other associated accounts;

10.     Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

b.     All existing printouts from original storage which concern the categories identified in subsection II.A; and

c.     All "address books" or other lists of contacts.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review.   The investigative team will take no further steps regarding any review of information so segregated absent further order of the court.   The investigative team may continue to review any information not segregated as potentially privileged.